## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

HOWARD L. JACKSON (#104336)             CIVIL ACTION

VERSUS

N. BURL CAIN, WARDEN             NO. 12-0767-BAJ-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, Howard L. Jackson, challenges his 1983 conviction and life sentence, entered in the Eighteenth Judicial Court for the Parish of West Baton Rouge, State of Louisiana, on one count of aggravated rape. The petitioner contends (1) that he was provided with ineffective assistance of counsel during post-conviction review proceedings because his appointed counsel failed to file a memorandum as directed by the state court judge after a hearing conducted on October 8, 1992, (2) that the prosecution withheld exculpatory evidence and/or knowingly presented false evidence at trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Napue v. Illinois*, 360 U.S. 264 (1959), (3) that he was denied equal protection in light of the racially discriminatory practice of choosing grand jury foremen in West Baton Rouge Parish in 1983, and (4) that he was provided with ineffective assistance of counsel at trial because his attorney failed to move to quash the grand jury indictment for that reason.

### Procedural History

The Court will not engage in a lengthy recitation of the procedural history relative to the petitioner's claims, which history is included in the prior Magistrate Judge's Report and

Recommendation dated November 21, 2013 (R. Doc. 15).  In summary, however, it is noted that

the petitioner was convicted and sentenced in 1983 to life imprisonment in connection with the

offense of aggravated rape.  Upon a subsequent appeal to the Louisiana Court of Appeal for the

First Circuit, the conviction and sentence were affirmed on May 30, 1984.  *State v. Jackson*, 450

So.2d 1053 (La. App. 1ˢᵗ Cir. 1984).  The petitioner's subsequent application for supervisory

review before the Louisiana Supreme Court was denied on October 3, 1986.  *State v. Jackson*,

494 So.2d 321 (La. 1986).  Upon the petitioner's failure to seek further review before the United

States Supreme Court, his conviction became final on or about January 2, 1987, after the passage

of the 90-day period allowed for him to seek such review.[1]

　　　After his conviction became final, the petitioner filed no fewer than seven applications

for post-conviction or other collateral review in the state trial court and, through one or more of

those applications, he has asserted the claims raised in this proceeding.  Specifically, it appears

that the petitioner's fifth post-conviction relief application, filed on or about April 10, 1996,

asserted the claim that the State withheld exculpatory evidence in violation of *Brady v.

Maryland, supra*.  It further appears that that application remained pending until it was finally

denied on the merits after an evidentiary hearing conducted in the state trial court on November

29, 2010.  In addition, the petitioner's seventh application for post-conviction relief, filed on or

about July 29, 1997,[2] asserted the other three claims that are presented in the instant case.  It

---

　　　1.  Inasmuch as the 90ᵗʰ day fell on January 1, 1987, which was a legal holiday, the
petitioner had until the following day, January 2, 1987, to file the referenced pleading in the
United States Supreme Court.

　　　2.  The United States Court of Appeals for the Fifth Circuit has instructed that federal
habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when
determining the filing date of a petitioner's state court filings.  Accordingly, pleadings submitted
by a habeas petitioner are considered to be "filed" in state court as of the moment that the

appears that that application also remained pending in the state trial court until the evidentiary

hearing of November 29, 2010, at which time the application was denied.  The petitioner

thereafter pursued these claims through the state appellate courts.  The petitioner's application

before the intermediate appellate court was denied by that court, without comment, on May 23,

2011, and his application before the Louisiana Supreme Court was denied, without comment, on

May 18, 2012.  Thereafter, on or about October 3, 2012, the petitioner filed the instant habeas

corpus proceeding in this Court.  Although this Court initially concluded that the petitioner's

claims were untimely, the Court has now ruled that the petitioner is entitled to equitable tolling

of the limitations period and that his claims are subject to further review.  *See* R. Doc. 24.

## Discussion

A review of the trial transcript shows that a fair and accurate summary of the evidence

was provided by the Louisiana Court of Appeal for the First Circuit on direct review of the

petitioner claims:

> Jackson abducted the victim outside a Baton Rouge nightclub, where she had
> been celebrating a friend's birthday, on the night of February 19, 1983, and ordered her at
> gunpoint to drive across the river to Port Allen in West Baton Rouge Parish where,
> threatening to "blow her mother f___ brains out" if she resisted, he raped her twice in a
> cane field in a place called Poplar Grove.  In the respite between the rapes, he stole some
> money, a set of car keys, and some other items from her purse.

---

prisoner places them in the prison mail system for filing, not on the date that the pleadings are
ultimately docketed by the receiving court.  *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir.
2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012).  *See also Houston v.
Lack*, 487 U.S. 266, 276 (1988) (applying the mailbox rule in connection with pleadings filed in
federal court).  Accordingly, inasmuch as the petitioner apparently signed his state court
application on July 29, 1997, and presumably gave it to prison officials for mailing on that date,
this Court will utilize that date as the date of the petitioner's filing.  In addition, in hereafter
referencing the dates of filing of the petitioner's various pleadings in the state and federal courts,
the Court will utilize, if ascertainable, the dates that the petitioner signed the respective
pleadings or submitted them to prison officials for mailing.

West Baton Rouge sheriff's deputies spotted Jackson as he was driving out of the cane field, and mistaking him for another man they had been searching for that night, attempted to pull him over. Instead of pulling over, however, Jackson led them on a high-speed chase through the town, the police in pursuit with sirens blaring and lights flashing. He forced one of the police cars off the road into a ditch before cornering himself in a dead-end alley.

Huddled in the passenger seat with a gun at her head during the chase, the victim jumped out of the car when it stopped and ran to safety. Jackson attempted to escape on foot but was apprehended and subdued after a brief but violent struggle with the deputies under a dilapidated cypress shack behind a nearby residence.

450 So.2d at 1054. At a later pretrial lineup, law enforcement officials asked each participant in the lineup to repeat the phrase, "Shut up bitch, I'm going to blow your mother f___ brains out," at which time the victim again identified the petitioner as the perpetrator, as she also did at trial.

Turning to a consideration of the petitioner's claims, the standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the

state court determination is not enough; the standard is one of objective reasonableness. *Id.* *See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Petitioner's Claim That He Was Provided With
<u>Ineffective Assistance Of Counsel During Post-Trial Collateral Review Is Without Merit</u>

In his first assignment of error, the petitioner contends that he was provided with ineffective assistance of counsel during post-conviction review proceedings.

After the petitioner's direct appeal proceedings were concluded, he asserted in a post-conviction review application that his constitutional rights had been violated during trial because he had been denied an impartial jury. Specifically, he asserted in that application that a prejudicial unfavorable juror had been placed on the jury because the trial court had failed to allow a sufficient number of peremptory challenges to defense counsel. Counsel was appointed for the petitioner in connection with that post-conviction claim, and an evidentiary hearing was conducted before the state trial court in October, 1992. After that hearing, the trial court took the matter under advisement and directed the parties to submit post-hearing memoranda addressing the petitioner's burden of proof in such instance. The petitioner complains, however, that whereas the attorney for the State filed a subsequent memorandum as directed, the petitioner's post-conviction attorney did not. According to the petitioner, this resulted in prejudice because the trial court thereafter denied relief in connection with that claim.

The petitioner does not here assert, with sufficient particularity, as an issue for this Court's review, a claim regarding the alleged actual impartiality of the jury that convicted him, a claim regarding the alleged failure of the trial court to allow a sufficient number of peremptory challenges, or a claim regarding the failure of his trial attorney to ascertain or utilize the peremptory challenges that state law provided. To the contrary, the petitioner only asserts as an issue before this Court a claim regarding the alleged ineffective assistance of his appointed post-conviction attorney in failing to submit a post-hearing memorandum as requested by the state court judge. Whereas the petitioner circles around the other issues in his supporting memorandum before this Court, those issues are not squarely presented herein. Specifically, in his initial pleading (R. Doc. 1), the petitioner specifically enumerated his "Grounds for Relief" and explicitly stated that his claim in this regard was that:

> Jackson was denied counsel in violation of the Constitutions of the United States when counsel failed to file a brief in support of a non-frivolous constitutional claim as provided by judicial order.

*See* R. Doc. 1 at pp. 5 and 16. *See also id.* at p. 25 (where the petitioner refers to the "present issue of ineffective assistance of counsel" as being "subsequent to the trial court's ordering both parties to brief the merit of the issue"). Although this Court employs a liberal interpretation in evaluating the claims of *pro se* petitioners, it is incumbent upon the petitioner, nonetheless, to advise the Court of the claims that he wishes to present for review, and the petitioner was explicit in listing his "Grounds for Relief." This Court will not peruse the entirety of the petitioner's supporting memoranda and attached documentation to locate claims that he did not squarely present. Accordingly, the Court interprets the petitioner's present claim as being only

with respect to the alleged ineffective assistance of his appointed post-conviction attorney in failing to file a memorandum as requested by the state court judge.[3]

Having identified the nature of the petitioner's instant claim, the Court finds that the petitioner is not entitled to relief in connection therewith. In this regard, the Supreme Court reiterated, in *Coleman v. Thompson*, 501 U.S. 722 (1991), that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." As such, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id.* at 752. Whereas the Supreme Court has since carved out a limited exception to this rule, such that inadequate assistance of counsel during initial-review collateral proceedings may establish cause that excuses a petitioner's procedural default relative to a claim of ineffective assistance of counsel at

---

3. Even were the Court to substantively address the petitioner's claims regarding an alleged actual impartial juror on the panel that found him guilty, the Court would not be inclined to grant the petitioner relief. It appears from a review of the petitioner's contentions and a review of the transcript of the *voir dire* proceedings in state court that after having questioned multiple panels of potential prospective jurors, after having chosen eleven members of the twelve-person jury panel, and after having exercised eleven of the twelve peremptory strikes granted to the defense by state law, the petitioner's attorney did not utilize his final peremptory strike for the twelfth juror, Barry Bergeron, who was the son of the chief criminal deputy of the investigating office and nephew of the Sheriff of West Baton Rouge Parish. According to the petitioner, his attorney was erroneously informed at that time by the courtroom deputy (although this is not reflected in the court record) that there were no further peremptory strikes available, and the attorney did not challenge that assertion. Notwithstanding this error, if error there was, the petitioner is unable to show that he was in fact provided with a jury that was not impartial. Notwithstanding Mr. Bergeron's relation to people employed in law enforcement, the prospective juror testified unequivocally during *voir dire* that he knew nothing about the case, that he could be fair and impartial, that he could listen to the evidence and enter a verdict of "not guilty" if the State failed to prove its case, that he would not "require any less or any greater burden of proof by the State simply because of" his relation to law enforcement officials, and that he understood and would apply the legal principles as explained by the judge. Although the failure of an attorney to strike from a jury pool persons who clearly express bias and an inability to be fair and impartial may amount to ineffective assistance in certain instances, *see Biagas v. Valentine*, 265 Fed. Appx. 166, 171-72 (5th Cir. 2008); *Virgil v. Dretke*, 446 F.3d 598, 609 (5th Cir. 2006), that is not the situation presented by the instant case.

trial, *see Martinez v. Ryan*, ___ U.S. ___, 32 S.Ct. 1309, 1313 (2012); *Trevino v. Thaler*, ___ U.S. _

_, 133 S.Ct. 1911, 1921 (2013), this exception is not applicable to the petitioner's instant claim,

which has not been found to be procedurally defaulted and is not here so found.

       In addition to the foregoing, from a substantive standpoint, the petitioner's claim would

fare no better. As will be addressed in greater detail below, in order for a habeas petitioner to

succeed in connection with a claim of ineffective assistance of counsel, he must be able to show,

not only that his attorney acted deficiently, but that the deficient conduct resulted in actual

prejudice to the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). The

petitioner is unable to do this in the instant case. Although the petitioner's attorney may have

failed to submit a post-hearing memorandum as requested by the trial court after the hearing of

October 8, 1992, the petitioner has not pointed to any legal argument or authority that should

have been presented by his attorney or that may have resulted in a different determination by the

trial court in connection with this issue. To the contrary, the petitioner represents that he

presented a *pro se* memorandum to the state court addressing his claims, *see* R. Doc. 1 at p. 22,

and he does not point to anything further that his attorney could have or should have provided.

Nor has the petitioner pointed to any errors or misstatements in the post-hearing memorandum

that was submitted by the State's attorney. The state court judge who presided over the

petitioner's post-trial application heard the evidence and argument presented at the hearing, and

her comments during the proceedings indicate that she had reviewed and was familiar with the

record relative to the petitioner's jury impartiality claim. There is no suggestion by the

petitioner that the trial judge employed an incorrect legal standard or imposed an improper

burden of proof upon the petitioner in resolving the issue before her. In short, there is nothing in

the record or before this Court to suggest that there is any likelihood that, had the petitioner's attorney submitted a post-hearing memorandum as requested, the decision of the state court would have been different. Thus, the petitioner is unable to meet the prejudice prong of his ineffective assistance of counsel claim relative to this issue.

The Petitioner's Claim That The Prosecution Withheld
Favorable Evidence And/Or Knowingly Presented False Evidence Is Without Merit

In his second assignment of error, the petitioner asserts that his constitutional rights were violated because the prosecution failed to disclose to the defense, prior to trial, pretrial statements made by two prosecution witnesses that were materially different from the witnesses' testimony at trial. The petitioner contends that, had these statements been provided, they could have been used by the defense to attack the credibility of these witnesses. The petitioner further suggests that, once the witnesses testified at trial in contradiction of their prior statements, the prosecution had an obligation to correct the known false evidence.

The prosecution's suppression of material evidence favorable to the accused violates due process regardless of whether or not the prosecution acted in good faith or bad faith in failing to make a timely disclosure of the evidence. *Brady v. Maryland*, 373 U.S. 83-87 (1963). Evidence that is "favorable to the accused" includes evidence that tends directly to exculpate the accused as well as evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The touchstone of materiality is a "reasonable probability" of a different result. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its

absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Id.*  As stated by the United States Court of Appeals for the Fifth Circuit:

> To establish a *Brady* claim, a habeas petition must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material.  In assessing the materiality of suppressed evidence, the Supreme Court explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Id.* at 682.  Recently, the Court further observed that a "reasonable probability" of a different result is shown when the non-disclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict.  *Kyles v. Whitley*, [*supra,* 514 U.S. at 435]....  Finally the materiality inquiry is applied to "the suppressed evidence collectively, not item-by-item."  *Id.* at 436.  Fifth Circuit decisions have expanded upon these statements, holding that "[t]he materiality of *Brady* evidence depends almost entirely on the value of the evidence relative to the other evidence mustered by the State."  *Smith v. Black*, 904 F.2d 950, 967 (5th Cir. 1990), *judgment vacated on other grounds*, 503 U.S. 930 (1992).

*Spence v. Johnson*, 80 F.3d 989, 994-95 (5th Cir. 1996) (citations omitted).

In addition to the foregoing, the Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence of false testimony that, although not solicited, is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  *See also Giglio v. United States*, *supra*, 405 U.S. at 153.  The Supreme Court has also stated that a new trial is dictated in this context when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury.  *Giglio v. United States*, *supra*, 405 U.S. at 154.  To find a violation of due process in this context, the petitioner must show that (1) the evidence was in fact false, (2) the prosecution knew it to be false, and (3) the evidence was material.  *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997).  It is not enough that the testimony is challenged by another witness or is inconsistent with prior statements.  *United*

*States v. Brown,* 634 F.2d 819, 827 (5th Cir. 1981).  To the contrary, false evidence or perjury is material, and a new trial is required, if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993) (citation and internal quotation marks omitted).  *See also Giglio v. United States, supra*, 405 U.S. at 154.  However, "[t]he mere *possibility* that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  *United States v. Agurs*, 427 U.S. 97, 109-10 (1976) (emphasis added).  However, "courts have been extremely reluctant to find a deprivation of due process when the prosecution has provided the defense with the necessary information and it can utilize the information, but decides, for tactical reasons, not to use such information."  *United States v. O'Keefe, supra*, 128 F.3d at 894.

In making the instant claim, the petitioner points specifically to prior statements made by the victim in this case, June Johnson, and to reports prepared by Detective Gordon Hebert, the officer conducting the initial investigation in connection with the charged offense.  The petitioner refers to these statements as being "replete with significant inconsistencies [and] false statements" such that, had the statements been disclosed, they would have "raised opportunities for the defense to attack the thoroughness and even the good faith of the investigation and would also have allowed the defense to question the probative value of certain crucial physical evidence."  However, notwithstanding the petitioner's contentions in this regard, he is only able to point to relatively minor inconsistencies between the witnesses' statements and their testimony at trial, none of which reflect dishonesty on the part of the witnesses or undermine this

Court's confidence in the result of the trial and none of which, had they been disclosed, would have had any likelihood of affecting the jury's verdict.

The inconsistencies pointed out by the petitioner include (1) the victim's pretrial description of the petitioner as having "black hair" whereas he asserts that his hair was "salt and pepper gray" at the time of the offense, (2) the victim's pretrial description of her assailant's clothing, in a pre-trial statement, as having been "brown pants and a beige shirt" whereas, at trial, she testified that he was wearing "beige slacks and a brown shirt," (3) the victim's pretrial statement that she observed and overheard the events leading up to the petitioner's arrest after escaping from her car – including the search of the surrounding area by law enforcement officials, the discovery of the petitioner under a shed in an adjacent yard, and a violent scuffle that ensued between the petitioner and law enforcement officials during his apprehension – whereas at trial the victim testified that she last saw the petitioner "when he exited the car and jumped the fence," and (4) the victim's pretrial statement regarding the amount of money taken from her by the offender, which statement did not refer to specific bill denominations, and her testimony at trial regarding the specific denominations thereof.

It is clear from a review of the referenced pre-trial statements that none of these statements are in fact exculpatory or favorable to the accused. To the contrary, all of the referenced statements are essentially consistent and point to the petitioner as being the perpetrator of the charged offense. Accordingly, the rule set forth in *Brady v. Maryland, supra* – that the prosecution has a duty to disclose evidence that is exculpatory or favorable to the defense – has no direct application in this case. And with regard to the petitioner's assertion that the noted discrepancies between the witnesses' statements prior to trial and their subsequent trial

testimony warrant a finding that the prosecution had a duty to correct the alleged false testimony under the rule set forth in *Napue v. Illinois*, *supra*, this assertion is similarly groundless.  The noted discrepancies are minor and explainable, and the evidence against the petitioner was overwhelming, including *inter alia* both a pre-trial and in-court identification of the petitioner by the victim (who had spent a substantial period of time with the perpetrator during the commission of the offense), the results of a rape kit that indicated that the victim had very recently engaged in sexual intercourse (within a matter of several hours), the presence of seminal fluid with traces consistent with the victim's blood type on the petitioner's clothing, the discovery of the petitioner hiding under a shed a very short distance (40-50 feet) from the vehicle abandoned by the victim and perpetrator, the discovery of a single shoe on the front seat of the victim's vehicle that was matched to a single shoe found worn by the petitioner when he was apprehended, and the discovery, in a drain in the jail cell occupied by the petitioner after his arrest, of a car key reportedly stolen from the victim by the perpetrator, which was determined to fit the victim's vehicle, and money in the denominations reportedly stolen from the victim by the perpetrator.  As a result, this Court is unable to conclude that the minor variances noted above, to any degree of reasonable likelihood, even if they had been argued to represent inconsistencies to one degree or another, would have altered the jury's determination of guilt in this case.  Little would have been gained by pointing out that the victim had described the perpetrator's hair as being black or his clothing as being a beige shirt and brown pants prior to trial.  Whereas at trial the petitioner may have presented his hair as being "salt and pepper grey" instead of black, and whereas he may have questioned the victim regarding her description of the clothing worn by the perpetrator as being either brown-shirt/beige-pants or beige-shirt/brown-pants, these variances

would not have changed the result of the trial. Beige and brown, in any event, are nothing more than lighter and darker shades of the same color, as are black and grey. Further, there is no clear discrepancy between the victim's statement that she observed and overheard the events surrounding the petitioner's apprehension on the night of the offense and her testimony at trial that the last time she saw the petitioner prior to trial was when he "exited the car and jumped the fence." To the contrary, the testimony was consistent throughout the trial that the victim was placed in a police car near where her car was abandoned and remained there while the police searched the area until the petitioner was located and apprehended in a place a mere forty or fifty feet away. Further questioning would merely have clarified that the victim was present and in sufficient proximity to observe and overhear the events described in her statement. Finally, whereas the petitioner may have been able to raise questions regarding an asserted lack of specificity in the victim's earlier recorded statement, regarding for example the denominations of bills in her possession and other items taken from her purse by the perpetrator at the time of the offense, compared to her testimony at trial when she was more specific, there were no direct contradictions between her earlier statements and her testimony at trial. Thus, there is no basis for concluding that false testimony was in fact presented at trial that the State was obligated to correct or otherwise address. A mere conflict between the factual recitations provided by multiple witnesses does not impute to the prosecution a knowledge that any one such recitation is false. *See United States v. Brown, supra*, 634 F.2d at 827. Further, in evaluating the above-noted discrepancies against the overwhelming evidence of the petitioner's guilt in this case, the Court is unable to conclude that these discrepancies are material in the sense that there is any reasonable likelihood that they would have affected the determination of the jury. *See*

*Kirkpatrick v. Whitley, supra*, 992 F.2d at 497. *See also Giglio v. United States, supra*, 405 U.S. at 154. As noted above, "[t]he mere *possibility* that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs, supra*, 427 U.S. at 109-10. Accordingly, the conclusion of the state court in rejecting the petitioner's claim in this regard, that "those little minute, minor things, those are not sufficient to throw out a conviction based on overwhelming evidence of guilt," did not involve an unreasonable interpretation of the facts or an unreasonable application of clearly established federal law, and this claim must fail as a result.[4]

The Petitioner's Claim Regarding The Denial Of Equal Protection
Resulting From The Alleged Racially Discriminatory Manner In Which Grand Jury
<u>Forepersons Were Chosen In West Baton Rouge Parish In 1983 Is Procedurally Barred</u>

The petitioner next contends that his constitutional rights were violated because the manner in which grand jury forepersons were chosen in West Baton Rouge Parish at the time of his indictment and trial was racially discriminatory, thereby violating his right to equal protection. The Court finds, however, that this claim, although technically exhausted, is subject to dismissal by reason of procedural default. Specifically, whereas the petitioner raised this claim in one or more of his applications for post-conviction relief in the state court, the claim

---

4. The Court further notes that there is a reference in the record to the petitioner's attorney having had "open file" discovery, which would indicate that the referenced "discrepancies" were available to the petitioner's attorney through a review of the prosecution's "entire file". *See* Transcript of Hearing held on April 26, 1988, at pp. 10 and 12. In addition, the Court notes that, during a preliminary hearing conducted in March, 1983, the investigating police officer clearly testified regarding certain matters that the petitioner here asserts were not disclosed to him prior to trial, *e.g.,* that the victim had reported the denominations of the bills allegedly taken from her by the perpetrator. See Transcript of Hearing held on March 3, 1983, at p. 12.

was not substantively addressed by the trial court at the hearing conducted on November 29,

2010, upon a finding that it was procedurally defaulted as contended by the State, relying upon

*State ex rel Roper v. Cain*, 763 So.2d 1 (La. App. 1st Cir.), *writ denied,* 773 So.2d 57 (2000).

Specifically, the trial court accepted the State's assertion that this issue had not been properly

raised and/or preserved during the trial through the filing of a motion to quash the indictment.  In

this regard, the law is clear that a habeas petitioner's claim of racial discrimination in the

selection of grand jury forepersons in Louisiana is procedurally barred if the petitioner has failed

to file a pretrial motion to quash the indictment.  *See Williams v. Cain*, 125 F.3d 269, 275 (5th

Cir. 1997).  *See also Deloch v. Whitley*, 684 So.2d 349, 350 (La. 1996).  The trial court in ths

instant case rejected the petitioner's claim for this specific reason.  Thereafter, when this issue

was presented to the state appellate courts on request for supervisory review, the appellate courts

declined to accept review.  Accordingly, it is clear that the last state court to review this issue

relied on a procedural rule in denying consideration of this claim.

When a state court decision to deny post-conviction relief rests on a state procedural

ground that is independent of the federal question raised by the petitioner and is adequate to

support the judgment, the federal court lacks jurisdiction to review the merits of the petitioner's

federal claims.  *Coleman v. Thompson*, *supra*, 501 U.S. 722, 729 (1991); *Moore v. Roberts*, 83

F.3d 699, 701 (5th Cir. 1996).  The independent and adequate state ground doctrine "applies to

bar federal habeas when a state court decline[s] to address a prisoner's federal claims because

the prisoner ha[s] failed to meet a state procedural requirement."  *Coleman v. Thompson, supra*,

501 U.S. at 729-730:

> In the absence of the independent and adequate state ground doctrine in federal habeas,
> habeas petitioners would be able to avoid the exhaustion requirement by defaulting their

federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731-32 (*quoting Rose v. Lundy*, 455 U.S. 509, 518, (1982)); *Moore v. Roberts, supra*, 83 F.3d at 703. This rule applies even if the state court addresses the substance of the claim in the alternative. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999).

For the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been, as here, based on a state procedural rule. *Moore v. Roberts, supra*, 83 F.3d at 702; *Sones v. Harbett*, 61 F.3d 410, 416 (5th Cir. 1995). The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." *Id.* The petitioner can rebut this presumption only by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by (1) demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts, supra*, 83 F.3d at 702.

The petitioner has failed to show that there exist the necessary cause and prejudice which would overcome the procedural bar. To establish "cause," the petitioner must show that some objective factor external to the defense prevented him from timely raising his claim in state court. *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992). To establish prejudice, the petitioner must show, "not merely that the [asserted] errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire

trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (Emphasis in original). Neither "cause" nor "prejudice" is present in the instant case that would support this Court's disregard of his procedural default. Further, to demonstrate that a failure to consider the claim will result in a "fundamental miscarriage of justice," a habeas petitioner must show, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999). To establish such actual innocence, the petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* In the absence of any such showing, the petitioner's claim that the manner in which grand jury forepersons were chosen in West Baton Rouge Parish at the time of his trial was unconstitutional is without merit and must be dismissed.

The Petitioner's Claim Regarding Alleged
<u>Ineffective Assistance Of Trial Counsel Is Without Merit</u>

The petitioner next asserts that he was provided with ineffective assistance of counsel because his attorney failed to preserve his claim regarding racial discrimination in the choosing of grand jury forepersons. In this regard, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.  *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  *Martin v. McCotter, supra*, 796 F.2d at 817.  Great deference is given to counsel's exercise of professional judgment.  *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.  *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).  To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  *Strickland v. Washington, supra*, 466 U.S. at 693.  Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  *Martin v. McCotter, supra*, 796 F.2d at 816.  The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  *Id.* at 816-17.  Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court

decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that the petitioner cannot make in the instant case. Applying the above standard to the petitioner's claim that his trial counsel was ineffective for failing to move to quash the grand jury indictment, it is clear that this claim is without merit. Even were the petitioner to prove successful in asserting that his counsel's performance was deficient in this regard, he is unquestionably unable to establish prejudice resulting from such deficiency. Given the strength of the evidence against him, it is without doubt that a timely motion to quash would have done no more than delay the inevitable. *See Merridith v. Cain*, 2006 WL 2054446, *7 (W.D. La. June 29, 2006) (Report and Recommendation adopted by District Judge). In other words, had the motion been made and granted at the trial court level, the petitioner would merely have been subjected to re-indictment by a properly convened grand jury, and there is no showing that the result would have been any different. *See Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003) ("[W]e have no doubt that, if [petitioner] had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment"); *Sepulvado v. Cain*, 58 Fed. Appx. 595, 2003 WL 261769, *6 (5th Cir. Jan 13, 2003) ("Petitioner has not attempted to articulate how the foreman selection process (in connection with a grand jury that indicts on mere probable cause found by 9 of 12 members) worked to his actual prejudice when he was convicted by a lawfully chosen petit jury of twelve persons"). Accordingly, there is no merit in the petitioner's assertion in this regard.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original).  In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the procedural or substantive ruling.  Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be denied.  It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on November 17, 2014.


**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**HOWARD L. JACKSON (#104336)**                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN**                             **NO. 12-0767-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 17, 2014.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**